UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRANK BAYER | CIVIL ACTION |
| VERSUS | NO. 11-2355 |
| MICHAEL J. ASTRUE, COMMISSIONER<br>SOCIAL SECURITY ADMINISTRATION | SECTION "F" (3) |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Plaintiff filed an application for DIB on July 13, 2009, alleging a disability onset date of September 30, 2008. (Adm. Rec. at 119-20). Plaintiff alleged disability due to lumbar disc disease and a learning disorder. (*Id.* at 129). Plaintiff, born on March 16, 1975, was 33 years old on the date on which he alleged disability and 35 years old at the time of the final administrative decision. (*Id.* at 216). Plaintiff has a high-school education (plus one year of college) and past relevant work experience as a bagger, meat clerk and stock clerk. (*Id.* at 41, 137).

Defendant initially denied plaintiff's application on July 31, 2009. (*Id.* at 76-79). Plaintiff sought an administrative hearing, which the agency held on April 9, 2010. (*Id.* at 33-64). Plaintiff and vocational expert ("VE") Kelly Roberts testified at the hearing.

On June 11, 2010, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff did not meet the definition of disability through the date of the decision. (*Id.* at 34-43). In the decision, the ALJ concluded that plaintiff has the severe impairment of history of lumbar surgery. (*Id.* at 36). The ALJ specifically rejected the argument that plaintiff's mental impairment of a reading disorder was severe. (*Id.*) The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 37). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with a sit/stand option and with no concentrated exposure to vibration. (*Id.* at 38). He concluded that plaintiff is unable to perform any past relevant work. (*Id.* at 40). Relying on the testimony of the VE, the ALJ determined that plaintiff can perform other work existing in significant numbers in the national economy. (*Id.* at 41). Specifically, the ALJ concluded that plaintiff can perform the jobs of interviewer, receptionist/information clerk and general office clerk. (*Id.* at 42). The ALJ thus denied plaintiff's application for SSI. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she was not disabled. (*Id.* at 28-30). On June 22, 2011, the Appeals Council denied plaintiff's request. (*Id.* at 12-7). Plaintiff then timely filed this civil action.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is

"substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial

evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the

5

courts, must resolve conflicts in the evidence." *Id*.

## IV.   ISSUES ON APPEAL

There are three issues on appeal:

(1) Whether the ALJ erred when he concluded that plaintiff's reading and writing disorder is not a severe impairment.

(2) Whether the ALJ violated plaintiff's right to procedural due process when he refused to submit plaintiff's interrogatory to the VE.

(3) Whether substantial evidence supports the ALJ's RFC determination.

## V.   ANALYSIS

### 1.   Whether the ALJ erred when he concluded that plaintiff's reading and writing disorder is not a severe impairment.

As noted above, the ALJ "completely reject[ed] the claimant's allegation that he is unable to read and write, including the affidavits submitted by the claimant and his wife." (Adm. Rec. at 36). Citing his school records that reflect that he was in special education for reading and that he was diagnosed with a disability, plaintiff contends that there is substantial evidence in the record to support the assessment of his learning disability as severe. (*Id.* at 456-519). Plaintiff also notes that Dr. Linda M. Brown, a neuropsychologist, evaluated him on November 21, 2002. (*Id.* at 279-90). Brown opined that plaintiff's test scores were consistent with learning disabilities involving reading and written language. (*Id.* at 288). Plaintiff also notes that he and his wife submitted affidavits to the ALJ in which they both attested that Mrs. Bayer completed all of plaintiff's reports and paperwork after he brought them home from work. (*Id.* at 176-77). Relying heavily on Brown's evaluation and his wife's affidavit, plaintiff argues that the ALJ erred when he completely rejected

6

plaintiff's contention that he has a severe learning disability. Plaintiff argues that the ALJ can not simply "pick and choose" the evidence that supports his position.

Citing the proper standard, *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the ALJ concluded that plaintiff's reading and writing disorder is only a slight abnormality that has such a minimal effect on plaintiff that it is not expected to interfere with his work and is thus not a severe impairment. (Adm. Rec. at 36-37). Having reviewed the record, the Court finds that substantial evidence supports this conclusion.

The ALJ noted that plaintiff's educational records confirmed that he passed his graduate exit examination in Language Arts, Mathematics, Science and Social Studies in 1992. (*Id.* at 36). He also noted that the VE testified that plaintiff had held positions in his past relevant work that required essential reading and writing. (*Id.* at 36-37). From 1995 to 1996, plaintiff worked as a meat selector, which required him to "pull[] store orders for meat, seafood, dairy and produce departments. . . . " (*Id.* at 140, 143). Plaintiff also "pulled items from slots, put on pallets, moved to another section of the warehouse, repeated until order was complete." (*Id.* at 144). Another of plaintiff's jobs required him to order supplies, schedule employees and compare man hours to sales. (*Id.* at 145). And another of plaintiff's positions required him to check in and inspect merchandise, ship orders, and locate items and pull them for customers. (*Id.* at 146). Further, his position as a store manager required him to complete reports and fill in numbers, although he stated that the reports were read to him, and someone else filled out the writing. (*Id.* at 148).

Plaintiff's reliance on Brown's 2002 evaluation is also misguided. Plaintiff held employment positions that required reading and writing long after 2002. (*Id.* at 140-48). Indeed, even Brown's

7

evaluation noted that reading comprehension is a relative strength for plaintiff. (*Id.* at 288). The VE testified that plaintiff's past relevant work required a specific vocational preparation ("SVP") from 2 – unskilled work – through 7 – skilled and light work. (*Id.* at 68-69). The VE also testified that plaintiff's manager position has an SVP of

> level 4 . . ., which states like for reasoning "applying principals [sic] of rational systems to solve practical problems and deal with a variety of concrete situations." Then it says "examples include bookkeeping, management, navigation. Okay for math you have different levels of algebra, geometry and shop math at a level four and then in terms of language its says "reading", under reading it says "read novels, poems, newspapers, periodicals." Writing it says "prepares business letters, summaries and reports." And under speaking it says "participates in discussions and debates."

(*Id.* at 69). The ALJ also relied on the evaluation of Dr. Jeanne George, who reviewed plaintiff's medical documentation and allegations regarding his learning disorder and opined that the learning disorder is not severe. (*Id.* at 37, 400-13). Plaintiff's ability to perform the duties of his past relevant work belies the conclusion that he suffers from a severe reading and/or writing disorder.

The ALJ also termed plaintiff's claims that he took home all of his paperwork to be completed by his wife as "implausible and ludicrous." (*Id.* at 37). The ALJ noted that after intensive questioning, plaintiff eventually admitted that he had to fill out paperwork himself at numerous positions. (*Id.* at 64-65). Plaintiff also admitted that he was able to "find ways around reading." (*Id.* at 64). For example, if something needed to be read, his supervisor would call him and "tell [him] what he needed to know." (*Id.*). And he admitted that he could "probably still get around reading. . . ." (*Id.*). In his application materials, plaintiff admitted that he can read and

understand English and that he could write more than his name in English. (*Id.* at 128). The ALJ further noted that plaintiff had obtained his scuba certification, which refuted his claims of illiteracy. (*Id.* at 37). While the ALJ noted that plaintiff has a reading disorder for basic reading skills, (*id.*), he found substantial evidence in the record and many inconsistencies that belied a finding that the disorder was severe under the standard set forth in *Stone*. It is not this Court's prerogative to try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at135. Substantial evidence supports the ALJ's conclusion here.

> **2. Whether the ALJ violated plaintiff's right to procedural due process when he refused to submit plaintiff's interrogatory to the VE.**

At the oral hearing, counsel for plaintiff asked the VE to provide the occupational codes from the Dictionary of Occupational Titles ("DOT") for the three jobs that she testified that plaintiff can perform: interviewer, receptionist/information clerk and office clerk. (Adm. Rec. at 70-72). The VE testified that she did not know them at the time but could provide them after the hearing. (*Id.* at 72). By letter dated April 9, 2010, the ALJ advised plaintiff that the VE had provided the occupational codes. (*Id.* at 173). In response, counsel for plaintiff asked the ALJ to submit the following interrogatory to the VE:

> Using the limitations set out in the first hypothetical at the hearing and adding the limitation that the person would have severe deficits in overall broad reading and overall broad written language, would that person be able to perform the jobs which you cited in response to that hypothetical?

(*Id.* at 175). The ALJ refused to submit the interrogatory to the VE. (*Id.* at 42).

Citing 42 U.S.C. § 405(b)(1), plaintiff argues that this refusal violated his right to due process. Section 405(b)(1) provides in pertinent part:

9

> Upon request by any such individual [who has received an unfavorable determination] . . . the Commissioner shall give such applicant . . . reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.

42 U.S.C. § 405(b)(1).

Here, the ALJ allowed counsel for plaintiff to fully question plaintiff and the VE at the administrative hearing and thus did not violate plaintiff's due process rights. *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). As noted above, the ALJ rejected plaintiff's argument that his reading and writing learning disorder is severe and carefully outlined his reasons for doing so. Because the ALJ rejected plaintiff's learning disorder as a severe impairment, he was not required to submit plaintiff's hypothetical to the VE. *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, *2 (5th Cir. June 18, 2001) (citing *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)) ("The hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes."). Accordingly, there was no error here.

### 3. Whether substantial evidence supports the ALJ's RFC determination.

As noted above, the ALJ concluded that plaintiff has the RFC to perform sedentary work with a sit/stand option and with no concentrated exposure to vibration. (Adm. Rec. at 38-40). Plaintiff argues that the ALJ failed to recognize the limiting effects of all of plaintiff's impairments. Thus, plaintiff contends, substantial evidence does not support the ALJ's RFC determination.

Plaintiff first argues that the ALJ improperly evaluated the opinion of plaintiff's treating physician, Dr. Carl Lowder, Jr. Plaintiff maintains that the ALJ accorded controlling weight to part

10

of Lowder's opinion but improperly discounted the rest. Plantiff notes that Lowder opined that his pain would cause occasional problems with attention and concentration; that he could walk only about two blocks, could stand for one hour and sit for more than two hours; that his condition required that he walk around every 90 minutes and take unscheduled breaks every one to two hours for five to 10 minutes; and that he had postural limitations, never being able to crouch, squat, or climb ladders or stairs. (*Id.* at 453-55).

Plaintiff notes that the ALJ adopted Lowder's opinion and accorded it controlling weight "as much as it is consistent with the residual functional capacity finding herein." (*Id.* at 40). The ALJ discounted Lowder's opinion that plaintiff would miss two days of work per month due to his impairments. (*Id.* at 40). And plaintiff contends that the ALJ completely discounted the limitations – noted above – opined by Lowder. Citing case law, plaintiff argues that "the [Commissioner's] attempt to use only the portions favorable to [him], while ignoring other parts, is improper." *Switzler v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Having reviewed the record, the Court finds that substantial evidence supports the ALJ's conclusion here. The ALJ noted that plaintiff underwent physical therapy and lumbar strengthening after a discectomy performed by Lowder in April 2009. (*Id.* at 39, 267). Although plaintiff's physical therapist recommended more therapy in July 2009, Lowder opined that he needed no continued therapy and that he "ha[d] had ample therapy to this point" and "ample time to get over this surgery." (*Id.* at 39, 384). Lowder also noted that plaintiff was "off all narcotics." (*Id.*). The ALJ noted that Lowder ordered a subsequent MRI, but the MRI failed to show any recurrent disc herniation. (*Id.* at 39). Indeed, on September 21, 2009, Lowder even opined that plaintiff had

11

reached maximum medical improvement ("MMI") on August 6, 2009. (*Id.* at 448).

The ALJ also considered that Lowder offered two inconsistent opinions, one in which he opined that plaintiff can perform light work, and one in which he opined that plaintiff can only perform sedentary work. (*Id.* at 40). *Palomo v. Barnhart*, 154 Fed. Appx. 426, 429 (5th Cir. 2005) ("The inconsistency in the treating physicians' reports provides good cause for not giving their testimony greater weight."). On September 21, 2009 – in the same report in which Lowder concluded that plaintiff had reached MMI – he opined that plaintiff can perform "at a light or light medium level . . . ." (Adm. Rec. at 448). Lowder also concluded that plaintiff can also "work on an OSHA category of light work physical demand level" as long as he is "not required to walk and not required to lift anything over 20 pounds." (*Id.*). The ability to perform light work necessarily implies that plaintiff can perform sedentary work, work that is less exertional than light. 20 C.F.R. § 404.1567(a)-(b). Lowder's opinion from September 21, 2009 thus supports the ALJ's conclusion that plaintiff can perform sedentary work.

On that same date – September 21, 2009 – Lowder filled out a physical RFC questionnaire in which he opined that plaintiff can perform only sedentary work. (*Id.* at 452-55). As noted above, inconsistent opinions allows the ALJ to accord less weight to the opinion of a treating physician. *Palomo*, 154 Fed. Appx. at 429. Notwithstanding such case law, Lowder's opinion that plaintiff can perform sedentary work is certainly in line with the ALJ's same conclusion. In short, although Lowder's two opinions are inconsistent, *both* of them support the ALJ's conclusion that plaintiff can perform at least sedentary work.

The ALJ also rejected Lowder's conclusion that plaintiff would have to miss two days of

12

work per month because of his impairments. (*Id.* at 40). The ALJ concluded that Lowder's opinion on this subject was based "on nothing more that the claimant's subjective allegations." (*Id.*). As the Commissioner correctly notes, good cause may permit an ALJ to discount the weight of a treating physician when the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Plaintiff has cited to no objective medical evidence in the record to support Lowder's conclusion here.

Plaintiff also reiterates his argument that the ALJ erred when he concluded that plaintiff's learning disability is not severe and thus failed to factor that limitation into his REF determination. The Court has already rejected plaintiff's arguments here and need not address them again.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusions here. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the

13

district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 28th day of December, 2012.

                                              **DANIEL E. KNOWLES, III**
                                              **UNITED STATES MAGISTRATE JUDGE**